IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SERGEY ALEKSASHIN,

                Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-01448-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

      Sergey Aleksashin ("plaintiff") brings this action pursuant to the Social Security Act (the

"Act"), 42 U.S.C. § 1383(c), to obtain judicial review of a final decision of the Commissioner of

Social Security (the "Commissioner"). The Commissioner granted plaintiff's application for Title

XVI supplemental security income ("SSI") under the Act, finding him disabled as of July 1, 2003;

due to plaintiff's excess resources, however, the Commissioner determined that he was not eligible

for retroactive SSI benefits.  For the reasons set forth below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.[1]

## BACKGROUND

Born on May 22, 1957, plaintiff filed his first application for SSI in January 1995, alleging disability as of September 2, 1993; his case has been ongoing since that time. Tr. 12. On March 25, 2005, a prior administrative law judge ("ALJ") issued a decision finding plaintiff disabled as of July 1, 2003, his amended alleged onset date. Tr. 12, 23.

On April 19, 2005, the Social Security Administration ("SSA") requested additional information in order to determine whether plaintiff's SSI payments would need to be adjusted due to excess resources. Tr. 12, 54. This additional information revealed that plaintiff owned four vehicles: a 2002 Honda (the "Honda"), a 1998 Isuzu Trooper (the "Trooper"), a 1998 Volkswagon Jetta (the "Jetta"), and a 1995 Chevrolet Astro Minivan (the "Astro Van"). Tr. 25, 33. The SSA calculated that, based on the National Auto Dealers Association's ("NADA") listed values, the Trooper, the Jetta, and the Astro Van had a combined market value exceeding the SSI resource limit of $3,000. Tr. 12, 62-67. As such, the SSA found that plaintiff was not eligible to receive SSI payments until August 1, 2006. Tr. 113.

Plaintiff filed a request for reconsideration of this decision, which was denied on June 22, 2005. Tr. 12, 62. Thereafter, plaintiff timely requested a hearing before an ALJ. Tr. 12, 70. On September 25, 2007, an ALJ hearing was held before the Honorable Ralph W. Jones; a supplemental hearing was held on October 30, 2007, at which plaintiff testified and was represented by counsel.

---

[1]   The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636.

Tr. 12, 116-33. In addition, an English/Russian interpreter appeared at and translated both hearings, as plaintiff is only in fluent in Russian. Tr. 116. On December 15, 2007, ALJ Jones issued a decision finding that plaintiff was not entitled to retroactive SSI benefits because his resources exceeded the Act's limit. Tr. 14-15. After the Appeals Council declined review of the ALJ's decision, plaintiff filed a complaint in this Court. Tr. 2-5.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) improperly assessing the value of his vehicles; and (2) denying his constitutional right to have a "full and fair hearing." Pl.'s Opening Br. 2-4.

I. The ALJ's Vehicle Valuation

Plaintiff asserts that "the use of a valuation method that only involved the NADA guidelines and a general formula versus the consideration of the particularities that would necessarily reduce

Page 3 - OPINION AND ORDER

the vehicles' value" constitutes reversible error. *Id.* at 8.  When these particularities are taken into consideration, plaintiff argues that the collective value of his vehicles would not exceed the resource limit for SSI eligibility; as such, he asserts that the ALJ's conclusion to the contrary was not based on substantial evidence. *Id.* at 4, 8.

The SSI program was enacted to provide financial assistance to "needy people" who are blind, disabled, or sixty-five years of age or older. *Hart v. Bowen*, 799 F.2d 567, 569 (9th Cir. 1986) (citations omitted).  Thus, to be entitled to benefits, the claimant must meet certain income and resource requirements. *Id.*; 42 U.S.C. §§ 1381a, 1382; 20 C.F.R. § 416.110.  A married SSI recipient may not receive benefits for any month in which his countable resources exceed $3,000. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.1205.  Countable resources are defined as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201.

As such, automobiles are generally considered countable resources. *Id.*; *see also* 20 C.F.R. § 416.1218.  Nevertheless, "[o]ne automobile is totally excluded regardless of its value" if it is used for transportation of the claimant or a member of the claimant's family. 20 C.F.R. § 416.1218(b). All remaining vehicles, however, are "treated as nonliquid resources and counted as a resource." *Id.*; *see also* 20 C.F.R. § 416.1201(c).

Here, it is undisputed that plaintiff has four vehicles registered under his name.[2] Tr. 14, 25,

---

[2] Plaintiff attempted to circumvent the regulations by "giving away [these] resource[s]." Tr. 33, 13. As such, shortly after the SSA started its investigation, plaintiff "sold" the Trooper to his sister for $985; plaintiff also "sold" the Jetta to his son for $925. Tr. 114-15. Plaintiff's son, however, was not yet 16 years old at the time of this transfer and still lived at home. Tr. 14, 24, 122. Accordingly, the ALJ determined that the Jetta "remain[ed] in [plaintiff's] household" for the purposes of the excess resources analysis. Tr. 14. In addition, the ALJ found that plaintiff had "given away the resources" and the "amount of $7,090 (the difference between the current

33, 122-23.  It is also undisputed that the newest of these vehicles, the Honda, was excluded from

the ALJ's resource calculation pursuant to 20 C.F.R. § 416.1218(b)(1).  Tr. 13-14.  Further, it is

undisputed that the NADA and Kelly Blue Book each assess the collective value of these vehicles

to drastically exceed the SSI resource limit.  Tr. 13, 36-52, 65-67.  Thus, the sole issue is whether

the ALJ's determination that plaintiff's three vehicles were worth more than $3,000 was supported

by substantial evidence.

Pursuant to his request for reconsideration, plaintiff submitted several detailed photographs

of the Trooper and Astro Van showing body damage.  Tr. 85-105.  He also submitted an appraisal

of the Trooper, Jetta, and Astro Van from Eastside Auto Sales ("Eastside").  Tr. 29-31, 59.  Eastside

collectively valued these cars at $2,800.  *Id.*  However, the dealership made clear that the quoted

prices reflected only what it would pay plaintiff for the vehicles and not what it would sell them for,

which was "much more."  Tr. 29-32.  For example, Eastside stated that it was selling a 1998 Isuzu

Trooper with substantially greater mileage for $3995.  Tr. 32.  In addition, Eastside stipulated that

the appraisal was based on the assumption that the vehicles did not have airbags; the dealership also

reduced the overall value of the vehicles by 50% due to their reconstructed titles.  Tr. 35-36.  Beyond

stating their mileage, Eastside's quotes provide no information regarding the internal functioning of

these vehicles.  Tr. 29-31.

At the hearing, plaintiff testified that he did not submit pictures of the Jetta because it had

no visible defects; rather, he stated it had electrical problems.  Tr. 129.  Moreover, plaintiff sought

to elaborate upon the physical defects present in the pictures he submitted of the Trooper and Astro

---

market value and the amount for which the vehicles were sold)," resulting in a corresponding
"deduct[ion] from his benefit payment" pursuant to 42 U.S.C. § 1382b(c)(1)(A).  Tr. 14-15.
Plaintiff does not challenge these findings.  *See generally* Pl.'s Opening Br.

Van. Tr. 123-28. Plaintiff's main contention was that these defects rendered his vehicles valueless. Tr. 119. The ALJ, however, stopped the hearing after thirty-three minutes because plaintiff's "testimony is pretty much what is annotated in the photographs" and, as such, was "essentially redundant of what's already in the record." Tr. 128, 131.

In his opinion, the ALJ expressly discussed all of the evidence that plaintiff submitted pursuant to his request for reconsideration. Tr. 13-14. The ALJ found that "Eastside['s] appraisal [was] not the best evidence, as [the] dealership admitted that it would buy the cars at certain prices, but sell them for much more on the lot," indicating that their appraisal did not accurately reflect the fair market value of these vehicles. Tr. 13, 35.

The ALJ also concluded that Eastside's appraisal was of little evidentiary value because it was based on misinformation. Tr. 13. Eastside discounted the prices of these vehicles due to their lack of airbags, yet the record reflects that at least the Jetta was equipped with this safety feature. Tr. 13, 30, 35-36. Further, as the ALJ noted, Foster Auto reported that the value of vehicles with reconstructed titles is usually decreased 10% to 20%, rather than the 50% reduction articulated by Eastside. Tr. 13, 35-36. A third dealership indicated that each vehicle would need to be looked at individually, regardless of the reconstructed title, in order to assess its value. Tr. 13, 33.

Moreover, the ALJ discussed how an SSA representative's on-site inspection was contrary to plaintiff's statements that "the vehicles are junk and not something he can readily sell." Tr. 13. The SSA representative reported that the Astro Van appeared to be in "average" condition, the Trooper appeared to be in "excellent" condition, and the Jetta appeared to be in "excellent condition [and an] extremely nice car." Tr. 32. An additional on-site inspection of just the Trooper confirmed that the "car was in excellent condition on the outside [and] looked like a new car." Tr. 35.

Page 6 - OPINION AND ORDER

Based on the totality of the evidence, including the annotated photos submitted by plaintiff, the ALJ determined that the vehicles in question had the following values: the Trooper was worth $4,940; the Jetta was worth $3,240; and the Astro Van was worth $1,700. Tr. 13. The ALJ arrived at these amounts by taking the NADA listed values for these vehicles and then reducing that amount by 20% "because of the [reconstructed] title[s]." *Id.* The ALJ therefore concluded that plaintiff was not entitled to retroactive SSI benefits due to his excess resources, remarking that "the market value [for the Jetta] alone exceeds $3,000." *Id.*

This Court finds that substantial evidence supports the ALJ's decision. Plaintiff failed to provide any objective evidence regarding the internal functioning of these vehicles, such as a mechanic's report or a DEQ inspection. Further, the record reveals that all of the cars in question were running during the relevant time period. As such, the ALJ did not err by only considering defects in the bodies of these vehicles in determining their value. This evidence reveals that plaintiff's cars were, with the exception of the Astro Van, in very good condition.

While plaintiff is correct that Eastside collectively valued the vehicles at slightly less than the $3000 SSI limit, a price quote from one dealership does not constitute substantial evidence, especially where, as here, there is ample contradictory evidence in the record. As the ALJ properly determined, that appraisal only reflected what Eastside would buy the vehicles for based on inaccurate information, including the assumption that these vehicles had no airbags and warranted a 50% reduction in value due to their reconstructed titles. However, the record establishes that these vehicles had a much higher market value; in fact, by Eastside's own admission, a car comparable to plaintiff's Trooper would retail for nearly $4,000. In sum, there is no evidence in the record that plaintiff's vehicles had a fair market value of substantially less than those amounts listed in the

NADA. Therefore, the ALJ's decision is affirmed as to this issue.

II.  Alleged Violations of Plaintiff's Due Process

Plaintiff argues that the ALJ violated his due process rights by refusing to permit additional testimony regarding the true value of the Jetta and Trooper. Pl.'s Opening Br. 2-4 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Accordingly, plaintiff asserts that "remand is required for rehearing so that [p]laintiff can be afforded the opportunity to submit all relevant evidence and testimony so that an accurate valuation of the subject vehicles can occur." *Id.* at 8.

Under the Social Security regulations, a claimant has a right to appear and present evidence, including testimony, at a hearing before an ALJ. 20 C.F.R. §§ 404.944, 404.950(a). Further, the Constitution's "procedural [due process] protections" apply in Social Security cases. *See Mathews*, 424 U.S. at 333-35. However, "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances"; as such, the amount of process that is required to comport with the Constitution "is flexible" and requires a case-by-case assessment of a number of private and public factors. *Id.* at 334-35 (citations and internal quotations omitted).

The Commissioner contends "that the ALJ complied with the demands of the *Mathews* case, that is, he conducted 'some form of hearing' before [plaintiff] was 'deprived of a property interest." Def.'s Resp. Br. 10 (citing *Mathews*, 424 U.S. at 333). The Court agrees with the Commissioner. Plaintiff had two hearings regarding the issue of excess resources. Tr. 12, 116-33. At the second hearing, the ALJ did not permit additional testimony because plaintiff previously provided annotated photos of his vehicles that, with the exception of the Jetta, accurately detailed their condition. Tr. 85-105. The ALJ determined that plaintiff's testimony, through which he sought to further outline the defects depicted in the photographs, was duplicative of evidence already in the record and, as

Page 8 - OPINION AND ORDER

such, would not be helpful.  Rather, the ALJ explained that the photographs, combined with plaintiff's annotations, provided "enough information" for him to make a decision.  Tr. 129.

Plaintiff does not cite to, and this Court is not aware of, any authority that holds that a claimant is allowed to testify or provide evidence on every issue at a Social Security hearing.  In fact, the regulations grant the ALJ discretion over "when the evidence will be presented and when the issues will be discussed."  *See* 20 C.F.R. § 404.944.  Regardless, contrary to plaintiff's assertion, the record reveals that the ALJ's decision to stop the hearing did not prevent plaintiff from testifying about "the relevant facts"; the ALJ merely concluded, in his discretion, that he was sufficiently appraised of the relevant facts from the evidence in the record.  Thus, the ALJ did not deprive plaintiff of his due process rights by truncating his testimony.

Moreover, plaintiff does not detail what "procedural protections" were absent in this case other than to state generally that "allowing testi[mony] about the relevant facts . . . would have entirely ameliorated the due process violation."  Pl.'s Opening Br. 8.  This testimony, however, would consist of plaintiff expounding upon information already in the record, which the ALJ considered pursuant to his decision.  The burden of establishing that an error is harmful falls on the party attacking an administrative agency's determination: "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."  *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)).

Because, as discussed above, the ALJ properly determined that the fair market value for the vehicles in question exceeded the SSI resource limit, plaintiff is unable to demonstrate prejudice from the ALJ's refusal to permit additional testimony.  In addition, because he neglected to

Page 9 - OPINION AND ORDER

specifically address what further procedure was mandated under these circumstances, and it is not

apparent to this Court, plaintiff cannot establish that the ALJ's early cessation of the hearing was

harmful. Therefore, for this additional reason, the ALJ's decision to stop the hearing early did not

deprive plaintiff of any procedural due process rights.

Finally, the Court rejects plaintiff's contention that this case should be remanded to more

fully develop the record regarding the value of these vehicles. In certain limited circumstances, the

ALJ has an independent duty to develop the record. *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir.

1992). However, the ALJ's "duty to further develop the record is triggered only when there is

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Further, the ALJ is required to

seek additional evidence only if the evidence already present consistently favors the claimant. *Lewis*

*v. Apfel*, 236 F.3d 503, 514-15 (9th Cir. 2001).

Here, neither the ALJ nor the SSA found the record to be ambiguous or insufficient for

proper evaluation. In addition, contrary to his contentions, plaintiff was provided over two years to

submit evidence relating to value of the Trooper, the Jetta, and the Astro Van; thus, the fact that he

failed to introduce any evidence, beyond his own testimony, indicating that his vehicles had severely

impaired values is not indicative of any deficiency in the record. More importantly, because there

is ample evidence in the record that conflicts with his statements, plaintiff's testimony, alone, is not

dispositive. This is especially true since plaintiff's "attemp[t] to conceal ownership" of the Jetta and

Astro Van created "a credibility problem." Tr. 129, 14-15. Simply put, plaintiff's failure to carry

his burden of proof does not equate to an inadequacy or ambiguity in the record. Therefore, because

the existing evidence is neither ambiguous or insufficient, and does not consistently favor plaintiff,

Page 10 - OPINION AND ORDER

the ALJ's duty to more fully develop the record was not triggered.

## CONCLUSION

For the forgoing reasons, the Commissioner's final decision is AFFIRMED and this case is

DISMISSED.

IT IS SO ORDERED.

Dated this 29th day of June, 2012.

Paul Papak
United States Magistrate Judge

Page 11 - OPINION AND ORDER